OPINION OF THE COURT
Edwin Kassoff, J.
This is a case of first impression. It involves an action by an elderly woman who is unable to travel to New York because of her confinement in a nursing home in Florida. To permit her her day in court, an innovative method for the taking of her testimony was utilized.
By order dated March 8,1984, this matter was set down for an inquest against defendant Vincent Ferrante, plaintiff’s son. The action against Ferrante Funding Co. was severed and is not before this court.
Plaintiff’s complaint alleges that plaintiff and defendant Vincent Ferrante entered into a partnership agreement, under the name Ferrante Funding Co., to carry on the business of buying and selling real estate, stocks and bonds. The business of the partnership was conducted from plaintiff’s two-family house in Queens County until July 1, 1982. On or about June 15, 1982, the defendant forced plaintiff out of the aforementioned premises and has continually resided there without paying rent or fees as provided for in the partnership agreement. Pursuant to *353 the terms of the partnership agreement, plaintiff demanded an accounting which defendant has failed to provide.
The complaint alleges a second cause of action for mental anguish and demands damages in the amount of $50,000. The complaint alleges that defendant embarked on a course of harassment and abuse including: refusing to buy food for plaintiff; eating plaintiff’s food; throwing a hassock fan at plaintiff, damaging a china closet and its contents; striking the plaintiff; removing the stove from plaintiff’s apartment; failing to pay for heating oil; placing of foods on high shelves out of plaintiff’s reach, all of which it is alleged caused her severe mental anguish and emotional distress. It is further alleged that this harassment by defendant exacerbated the plaintiff’s condition, causing bleeding, hospitalization and an operation to remove her colon and spleen.
Plaintiff, who is 92 years old and in poor physical condition, is permanently confined to a nursing home in Florida. The court determined that because of plaintiff’s advanced age and poor physical condition she could not travel to Queens County to testify at the inquest. The dilemma confronting the court was how to conduct the inquest, which required plaintiff’s testimony and the introduction of exhibits, without the physical presence of the plaintiff in New York State. To render justice, the court had to devise a method that would protect the legal rights of a frail, elderly confined woman without prejudicing the rights of the defendant. The court determined that justice would be best served by having the plaintiff testify from Florida via a telephone conference call. Plaintiff’s telephone testimony was videotaped in Florida and simultaneously transcribed by a court reporter in Queens County.
The procedure for conducting the telephone inquest was practical and effective. Plaintiff’s counsel was advised in advance of the date and time of the telephone conference call. He was instructed to have present at plaintiff’s nursing home at the time of the conference call, a notary to administer the oath to the witnesses and a video tape operator to record the witnesses’ testimony. He was also instructed to provide the plaintiff with exact legible copies of all exhibits to be introduced. The purpose of this was to insure that plaintiff, after identifying each exhibit, could hold it up to the camera to be videotaped, thus permitting the court when reviewing the tape, to ensure that the marked exhibits and the copies in plaintiff’s possession were the same.
The inquest was held in chambers on December 4, 1984. Present in chambers with me was plaintiff’s attorney, my court clerk, a court reporter and my law clerk. A telephone call was *354 made to the nursing home in Florida. The telephone conversation was broadcast over a speaker-phone. After ascertaining that the notary, video tape operator, plaintiff and another son were present and that everyone was ready to proceed, the court directed the clerk to call the case. The notary swore in the plaintiff and the witness. Plaintiff’s attorney then questioned the plaintiff and her witness over the telephone. The testimony of the witness and the plaintiff were recorded on videotape in Florida and transcribed by the court stenographer in Queens, thereby providing a visual and stenographic record of the Florida testimony. Copies of all exhibits marked in evidence in chambers were examined and identified by the plaintiff prior to their admission in evidence. Each page of the copy of each exhibit was videotaped in Florida. At the conclusion of the testimony the court adjourned the inquest to January 8,1985, to permit the plaintiff to call an expert witness to testify to the rental value of the two apartments at the subject premises.
At the continued inquest on January 18,1985, plaintiff called Amrik Hira who testified that he was a licensed real estate broker and has been so licensed for four years. He further testified that he is familiar with the subject premises and the rental value of similar apartments in the immediate area of the subject premises.
The appraiser testified that it was his expert opinion that the value of the monthly rental for the two apartments is approximately $1,650 per month.
The court, at the close of the inquest, permitted plaintiff’s attorney to conform his pleadings to the proof.
Based upon the evidence presented, the court finds for the plaintiff in the amount of $51,500 which represents a monthly rent of $1,650 for the subject premises from July 1, 1982 to January 31, 1985.
The court directs that the copartnership be dissolved and a receiver be appointed. Defendant is further directed to pay plaintiff $1,650 per month rent for the subject premises commencing February 1, 1985, and continuing until the sale of the property.
The court awards plaintiff $25,000 for her cause of action for mental distress. It is well settled in New York that one who embarks upon a deliberate and malicious campaign of harassment or intimidation gives rise to a cause of action for mental distress (Nader v General Motors Corp., 25 NY2d 560; Long v Beneficial Fin. Co., 39 AD2d 11). Liability arises when defendant’s conduct is extreme and outrageous as measured by the *355 reasonable bounds of decency. (Murphy v American Home Prods. Corp., 58 NY2d 293; Fischer v Maloney, 43 NY2d 553; Weiner v Weiner, 84 AD2d 814; Halio v Lurie, 15 AD2d 62.) The court finds, based upon the evidence, that the defendant committed all of the acts alleged in the complaint and that he intentionally, for the purpose of causing severe mental distress to the plaintiff, conducted himself in a manner so shocking and outrageous as to exceed all reasonable bounds of decency. However, the court limits its award of damages to $25,000 because plaintiff failed to introduce any evidence to substantiate her claim that defendant’s actions exacerbated her condition, resulting in surgery.
The court, prior to rendering its decision, has reviewed all of the evidence, including the videotape.